1:26-mj-00033 AEM

AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Special Agent Brady O'Donnell, being duly sworn, depose and state that:

1.      I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been since August of 2020. I am currently assigned to the New England Field Division, where investigate drug trafficking and money laundering organizations. I graduated from the DEA Basic Agent Training Academy in Quantico, Virginia in 2020. I have participated in many aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and packaged and distributed, and the methods of payment for such drugs. I have been the affiant on numerous Title-III wire taps, search warrants, and arrest warrants involving violations of state and federal narcotics trafficking laws. These investigations have resulted in the seizure of drugs, drug-related assets, firearms, as well as the arrest of individuals for drug and firearms related offenses. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am an investigative or law enforcement officer of the United States within the meaning of Title 18 U.S.C. 2510(7), in that I am empowered by law to conduct investigations and to make arrests for federal felony offenses.

**PURPOSE OF AFFIDAVIT**

2.      13.      I submit this affidavit in support of a criminal complaint alleging that John TEJADA ("TEJADA" or the "Target Subject") violated 21 U.S.C. § 846 and 21 U.S.C. §§

841(a)(1) and (b)(1)(A)(vii), attempted possession with intent to distribute (a)(1) 5 kilograms or more of cocaine (the "Target Offense"). Based on the facts in this affidavit, there is probable cause to believe that the Target Subject has committed the Target Offense. The facts set forth in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested Complaint and does not set forth all of my knowledge about this matter.

**PROBABLE CAUSE**

3.      In 2026, a DEA Confidential Source ("CS-1")[1] reported the activities of John TEJADA YOB 1977 from Lawrence, Massachusetts. According to CS-1, TEJADA was looking for a new source of kilogram quantities of cocaine and wanted to purchase  kilograms quantities of cocaine. TEJADA used account number xxx-xxx-2345 associated with the Signal Application ("SIGNAL ACCOUNT "2345") to contact CS-1. [2]

4.      On July 24, 2026, posing as a cocaine trafficker of Mexican decent, I (I OR "UC")began speaking with TEJADA via text message, on SIGNAL ACCOUNT 2345 . According to CS-1,  TEJADA wanted to purchase cocaine between July 25 and 26, 2026. On July 26, 2026, I messaged SIGNAL ACCOUNT 2345 in Spanish to notify him that everything was ready for the following day, July 27, 2026, and it would be with him in Cranston, Rhode Island before 1:00 p.m. EST:

---

[1]  CS-1 is a defendant cooperating source working for the DEA in hopes of prosecutorial leniency. CS-1 has a criminal history related to narcotics and has a pending drug trafficking charge.  CS-1 has never provided information proven to be false and has provided investigators with reliable information to date.
[2] Signal is an end-to-end encrypted messaging application.



See below for translation.

5.      On July 27, 2026, at 11:01 p.m. EST, I contacted SIGNAL ACCOUNT 2345 and explained via text message that I would send the address where the transaction would take place in 1 hour. At 12:08 p.m. EST, I sent the address for the Walmart at 1776 Plainfield Pike, Cranston, RI 02921 over SIGNAL ACCOUNT 2345. Shortly after, I sent a map and pin[3], via SIGNAL ACCOUNT 2345, in the parking lot, then I sent an image of a black Subaru SUV with a Maine license plate parked in front of a rust-colored cargo container. I then explained via text,  that there were 4 bags in the trunk and some of them were in the spare tire area. The user of the SIGNAL ACCOUNT 2345 acknowledged my messages with "ok" on multiple occasions:

---

[3] A pin is to place a digital marker on an exact spot on a digital map application like Google Maps or Apple Maps.

3



Translation: Buddy in one hour I'll send you the address.

Translation: Buddy there are 4 bags in the trunk part of it is in the spare tire wheel.

6.    CS-1 informed me that he/she had previously explained to TEJADA kilogram exchange would be a dead drop[4] and TEJADA would not have to meet with anyone. TEJADA was instructed that he would be notified by the Mexican source of supply (your affiant acting in an undercover capacity) via Signal to coordinate the exchange. According to CS-1, TEJADA was to bring over $100,000 as a partial upfront payment for the kilograms and would pay the remaining balance in less than a week. TEJADA was to leave the partial payment in the dead drop vehicle after retrieving the agreed upon 30 kilograms of cocaine.

---

[4] Dead drop refers to narcotics left in a specified area or vehicle unattended. In this context, a dead drop would be leaving narcotics in a vehicle for the customer to retrieve the narcotics from the specified vehicle and leaving payment inside the same vehicle.

7.    In the morning hours of July 27, 2026, investigators with the DEA Providence District Office parked an undercover police vehicle (matching the description of the photo of the vehicle I had sent to the user of the SIGNAL ACCOUNT 2345) in the parking lot of a retail establishment located at 1776 Plainfield Pike, Cranston, Rhode Island; this vehicle would serve as the dead drop vehicle discussed above for the 30 kilogram transaction. Prior to dropping the vehicle off, investigators placed 30 kilograms of sham narcotics inside the trunk of the UC vehicle inside 4 separate bags and suitcases; 2 of which were concealed in the spare tire area of the trunk. At approximately 9:30 a.m., investigators also established surveillance of TEJADA's known residence, in Lawrence, Massachusetts ("residence")[5].

8.    At approximately 9:47 a.m., investigators observed TEJADA leaving his residence in a Silver Chevy Silverado, Massachusetts registration, which is registered to John TEJADA at xxx6 Exxxx Street, Lawrence, Massachusetts. Investigators were unable to follow.    At approximately 11:09 a.m., investigators observed TEJADA return to his residence, park in the driveway, then enter the residence. Shortly after, at approximately 11:19 a.m., investigators observed TEJADA exit the residence, briefly go over to the Chevy Silverado, then meet with a a person operating a White Honda Pilot, Massachusetts registration xxxxxxx that was parked in front of his residence.[6] Shortly after, TEJADA entered the front passenger seat, then the White Honda Pilot left the area. The Massachusetts registration xxxxx on the White Honda Pilot is a livery license plate registered to an identified female however, the vehicle appeared to be operated by a Hispanic male. Investigators maintained mobile surveillance of the White Honda Pilot as it headed towards Rhode Island.

---

[5]  Investigators were able to identify TEJADA's residence through querying TEJADA's license information with the Massachusetts Department of Motor Vehicles.

[6] It should be noted that law enforcement was not in a position to see if TEJADA had anything in his hands when he entered into the Honda Pilot.

9.    At approximately 1:00 p.m., investigators observed the White Honda Pilot enter the parking lot at 1776 Plainfield Pike, Cranston, Rhode Island. The vehicle drove around the lot parking briefly before moving and parking in front of the retail establishment located there. Both TEJADA and the Hispanic male driver, later identified as EAP[7], were observed exiting the vehicle and entering the retail establishment at the met location at 1:05 p.m. Minutes later, investigators observed TEJADA and EAP exit the Walmart and re-enter the White Honda Pilot, however, TEJADA got into the back seat on the driver's side instead of the front passenger seat. Moments later, investigators observed the White Honda Pilot drive towards the drop vehicle parked in the corner of the retail establishment parking lot. Investigators observed the White Honda Pilot park directly behind the UC vehicle in a position so that the back driver's side door was at the trunk of the UC vehicle. The following exchange was recorded by DEA airwing. At approximately 1:13 p.m., TEJADA was observed exiting the back driver's side door then he opened the trunk of the UC vehicle while EAP stayed inside the vehicle.  TEJADA proceeded to load the bags of sham kilograms into the back seat of the White Honda Pilot. TEJADA was then observed placing a black plastic bag in the trunk of the UC vehicle, and at this time, investigators converged in and detained both TEJADA and  EAP:

---

[7] EAP was not charge in connection with this incident.

6



10.     As investigators pulled up to TEJADA with emergency lights activated, your affiant observed TEJADA momentarily clutching a black crossbody bag around his abdomen. Your affiant then issued TEJADA commands to put his hands up and TEJADA complied. Incident to TEJADA's arrest, a loaded handgun was found inside the aforementioned black crossbody bag on TEJADA's person.

11.     Also located on TEJADA's person was a telephone which was associated with telephone number xxx-xxx -2345. Your affiant placed a call to the phone number ending 2345 and the phone found on TEJADA's person rang, confirming that this phone bore the same telephone number as the SIGNAL ACCOUNT your affiant was communicating with. Three of the four bags of sham kilograms were found in the back seat area of the White Honda Pilot and the final bag of sham and cash currency were located in the spare tire area in the trunk of the UC

vehicle. The cash currency was found inside the black plastic bag TEJADA was previously observed placing in the UC vehicle[8]:



12.       Both TEJADA and EAP were transported to the Providence District Office for processing. TEJADA spoke fluent English and was mirandized in English. TEJADA acknowledged verbally and in writing that he understood his rights, however, TEJADA was unsure if he was willing to answer any questions[9]. TEJADA then proceeded to volunteer statements, with no prompting or questioning by law enforcement, that he thought he was picking up marijuana and was surprised when he saw kilograms of cocaine in the UC vehicle, however, at no point prior to this statement did investigators specify that the kilogram shaped

---

[8] The cash currency located in the trunk will be counted at a later date by the USMS and the DEA does not count the currency by policy, however, it is believed that the currency is approximately $40,000.
[9]   TEJADA did not initial or mark yes next to the question on the Miranda form that asked if he would be willing to answer questions.

object contained cocaine. Shortly after, TEJADA provided written consent for his residence and two phones found on his person. Investigators later searched TEJADA's residence and located 2 rifles, 2 shotguns, 2 handguns, multiple high-capacity rifle magazines (illegal in the state of Massachusetts), and a large amount of ammunition to include boxes of ammunition labeled law enforcement only. A license to carry for the State of Massachusetts was located on TEJADA's person and all firearms were purchased legally, however, TEJADA is not legally authorized to carry a concealed firearm in the State of Rhode Island.

## CONCLUSION

13. Based on the foregoing, there is probable cause to believe that on or about and July 27, 2026, in the District of Rhode Island, John TEJADA attempted to possess with intent to distribute (a)(1) 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A)(viii).

Respectfully submitted,

_____

Brady O'Donnell
Special Agent
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by **Telephone**.
(*specify reliable electronic means*)

July 28, 2026
_____
*Date*

_____
*Judge's signature*

**Providence, Rhode Island**

_____
*City and State*

_____
*Amy E. Moses, U.S. Magistrate Judge*

9